No. 95-252

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STEVEN K. BURGLUND,

      Petitioner and Appellant,

  v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

      Insurer, Respondent, and Cross-Appellant,

  for

UNITED PARCEL SERVICE,

      Employer.

FILED

NOV 21 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Darrell S. Worm, Ogle & Worm,
            Kalispell, Montana

      For Respondent:

            Larry W. Jones, Senior Attorney,
            Liberty Mutual Fire Insurance Co.,
            Missoula, Montana

Submitted on Briefs:  August 15, 1996

Decided:  November 21, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Steven K. Burglund appeals from the amended findings of fact, conclusions of law, and judgment entered by the Workers' Compensation Court on April 10, 1995, and from the order denying his petition for a new trial filed on May 1, 1995. Liberty Mutual Northwest Insurance Company and United Parcel Service (UPS) filed a cross-appeal of the court's amended findings of fact, conclusions of law, and judgment. The cross-appeal is limited to the twenty percent disability award granted by the Workers' Compensation Court as an indemnity benefits award. We affirm the court on both issues raised on appeal.

The issues on appeal are as follows:

1. Did the Workers' Compensation Court err in denying permanent partial disability (PPD) benefits to Burglund pursuant to § 39-71-703, MCA (1983), for his 1984 industrial injury?

2. Did the Workers' Compensation Court err in determining that Liberty is liable under §§ 39-71-705 through -708, MCA (1983), for payment to Burglund of 100 weeks of PPD benefits, representing a twenty percent disability?

## FACTS

Burglund was born on April 22, 1955, and is presently forty-one years old. He graduated from high school and attended an electronics institute in the early 1970s. He then installed security equipment for a year or two and worked as a parts clerk at several auto supply stores. Burglund has been employed by UPS as a package car driver since 1980. His employment duties consist of

picking up and delivering UPS packages, and sorting and loading packages at the Kalispell UPS Center. Burglund's "sort-and-load" duties involve the lifting of packages off a conveyer belt and transferring them several feet to the delivery trucks. The packages weigh up to seventy pounds; however, the average package weighs only fifteen to twenty-five pounds.

On February 14, 1984, Burglund suffered an industrial injury arising out of and in the course of his employment with UPS when he fell off a platform and injured his back. He returned to work as a full-time package car driver on March 12, 1984. He continued to suffer back pain and was examined by Dr. Henry Gary, a neurosurgeon, on February 16, 1988. Dr. Gary diagnosed Burglund as having a herniated disc at the L5-S1 level.

Between February 1988 and February 1991 his back and leg pain increased. On February 18, 1991, Dr. Gary performed a lumbar laminotomy and foramenotomy at the L5-S1 vertebral level. Burglund was off work until June 1, 1991, at which time he returned to work as a full-time package car driver. Both of his doctors released him to return to work without any restrictions.

On July 16, 1992, Dr. Gary wrote a letter in response to an inquiry from Burglund's attorney regarding his impairment and medical restrictions. He stated that Burglund would have a ten percent permanent partial impairment rating and needed to have some restrictions in any type of work as to the amount of lifting he could do. The letter said that reasonable limits would include not lifting anything over twenty to twenty-five pounds with any

3

frequency and not lifting anything over fifty pounds on an infrequent basis. In the fall of 1992, Burglund was laid off on account of this letter, as the fifty pound limit was less than the seventy pounds he was required to lift for his position with UPS. Liberty attempted to pay PPD benefits, but Burglund refused them on the basis that he had at all times been physically able to perform his job duties.

On November 24, 1992, Burglund underwent a physical capacities evaluation to further define his physical restrictions. During this evaluation he reported feeling no pain and demonstrated no pain behaviors. The examiner therefore concluded that Burglund was physically able to work as a UPS package car driver. Dr. Gary reviewed this evaluation and concluded that Burglund would be able to perform his job without any restrictions. As a result, Burglund was allowed to return to work on January 5, 1993, as a UPS package car driver.

In 1993, Burglund filed a claim seeking PPD benefits pursuant to § 39-71-703, MCA (1983), and §§ 39-71-705 through -708, MCA (1983). After trial the court issued its findings of fact, conclusions of law, and judgment on January 19, 1995. On February 9, 1995, Liberty filed a petition for amendment to the court's findings and conclusions or alternatively for a new trial. The court withdrew its findings of fact, conclusions of law, and judgment on March 1, 1995. Thereafter, the parties filed a stipulation clarifying the scope of issues to be submitted to the court for decision. On April 10, 1995, the Workers' Compensation

4

Court filed amended findings of fact, conclusions of law, and judgment and awarded Burglund PPD benefits for a period of 100 weeks at the weekly rate of $138.50, less the ten percent impairment award already paid by Liberty. Burglund filed a petition for a new trial and for an amendment to the findings and conclusions, which the court denied. He appeals from the order denying his petition and from the amended findings of fact and conclusions of law and judgment. Liberty and UPS have filed a cross-appeal alleging that there is not substantial credible evidence in the record to support the Workers' Compensation Court's decision that Liberty is liable under §§ 39-71-705 through -708, MCA (1983), for payment to Burglund of 100 weeks of PPD benefits.

ISSUE 1

Did the Workers' Compensation Court err in denying PPD benefits to Burglund pursuant to § 39-71-703, MCA (1983), for his 1984 industrial injury?

This Court will uphold the Workers' Compensation Court's findings of fact if they are supported by substantial credible evidence. Wunderlich v. Lumbermens Mut. Cas. Co. (1995), 270 Mont. 404, 408, 892 P.2d 563, 566. We review the trial court's conclusions of law to determine if they are correct. Turjan v. Valley View Estates (1995), 272 Mont. 386, 390, 901 P.2d 76, 79.

The parties entered into a stipulation which authorized the Workers' Compensation Court to determine Burglund's entitlement to PPD benefits on both a loss of earning capacity basis under § 39-71-703, MCA (1983), and on an indemnity basis under

5

§§ 39-71-705 through -708, MCA (1983). A disability award under § 39-71-703, MCA (1983), is based on the actual loss of earning capacity resulting from the injury, whereas an indemnity benefit under §§ 39-71-705 through -708, MCA (1983), awards compensation for possible loss of earning capacity in the future. Stuker v. Stuker Ranch (1991), 251 Mont. 96, 98, 822 P.2d 105, 107.

Burglund argues that the Workers' Compensation Court erroneously interpreted the law in finding that he suffered no loss of earning capacity and concluding, therefore, that he was not entitled to benefits under § 39-71-703, MCA (1983). He argues that the Workers' Compensation Court failed to determine whether his ability to earn in the open labor market had been diminished by his work-related injury after taking into account all relevant factors.

Section 39-71-703, MCA (1983), provides that weekly compensation benefits in the amount of 66-2/3 percent of the actual diminution in the worker's earning capacity shall be paid for an injury producing permanent partial disability. Permanent partial disability is defined by § 39-71-116(12), MCA (1983), as "a condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability." We have previously held that the relevant inquiry under § 39-71-703, MCA (1983), is whether a claimant's ability to earn in the open labor market has been diminished by a work-related injury after taking into account all relevant factors. Sedlack v. Bigfork Convalescent Center (1988), 230 Mont. 273, 749 P.2d 1085. These factors include the injured worker's age, occupation, skills and

6

education, previous health, number of productive years remaining, and degree of physical or mental impairment. Reeverts v. Sears (1994), 266 Mont. 509, 514, 881 P.2d 620, 623. Under § 39-71-703, MCA (1983), a claimant does not have to prove that his job is in jeopardy or that there is a likelihood of losing present employment because of an injury to be eligible for permanent partial disability benefits. Taylor v. Columbia Falls Aluminum Co. (1990), 243 Mont. 464, 795 P.2d 433.

The Workers' Compensation Court's conclusion that Burglund was not entitled to benefits under § 39-71-703, MCA (1983), was based on its resolution of factual disputes concerning whether he had physical restrictions from his 1984 injury which would diminish his earning capacity on the open labor market. In order to address Burglund's assertion, we must first address the findings upon which the court based its conclusion that he was not entitled to benefits under § 39-71-703, MCA (1983).

At trial, Burglund claimed significant and prolonged physical restrictions. The Workers' Compensation Court did not find his testimony credible and it determined that Burglund did not have the physical restrictions he claimed. The evidence and testimony presented at trial showed that Burglund returned to work without a physician-imposed restriction resulting from his work-related injury. Burglund completed a medical history form and stated that he did not have any disease, illness, or defect which might result in a disability or incapacity. In addition, Burglund's numerous recreational activities, including nordic ski patrol, white water

7

rafting, sailboat racing, and hunting, indicate that he remains in excellent physical condition. This Court will not substitute its judgment for that of the trial court when the issue relates to the credibility of the witnesses or the weight given to certain evidence. Wunderlich, 892 P.2d at 566. The court's finding that Burglund did not have the physical restrictions he claimed is supported by substantial credible evidence in the record.

Burglund asserts that the Workers' Compensation Court erred by analyzing his claim in the context of a "pre-injury normal labor market" and not in the context of an open labor market as set forth in Sedlack, 749 P.2d at 1088. However, given the fact that the Workers' Compensation Court specifically found that Burglund did not suffer from the physical restrictions he claimed, a review of Burglund's contention would be superfluous.

The court evaluated the relevant factors in its determination of Burglund's loss of earning capacity. It considered Burglund's education and stated that although his electronics certification is obsolete, his previous education demonstrates his intelligence to master technical subjects and that the type of work he has chosen does not require the level of education he has achieved. As to Burglund's work history, the court noted that performance in his position at the time of his injury has not been diminished by his injury. The court stated that Burglund's pain and disability does not significantly interfere with his employment. Burglund's age was considered by the court to be a neutral factor. The Workers' Compensation Court

8

therefore concluded Burglund suffered no actual wage loss from his injury and is physically able to continue performing his job until he reaches retirement age. We determine that the Workers' Compensation Court correctly interpreted the law when it determined that Burglund suffered no loss of earning capacity under § 39-71-703, MCA (1983), and that it properly denied PPD benefits to Burglund under this section.

Burglund also appeals the denial of his motion for a new trial. The decision to grant a new trial is within the sound discretion of the trial judge and will not be overturned absent a showing of manifest abuse of discretion. Fjelstad v. State Dep't of Highways (1994), 267 Mont. 211, 220, 883 P.2d 106, 111; Stanhope v. Lawrence (1990), 241 Mont. 468, 471, 787 P.2d 1226, 1228.

The Workers' Compensation Court found Burglund's testimony at trial that he was physically restricted in his job performance unbelievable. Burglund argues that newly discovered evidence of his current physical condition raises a reasonable probability of a different result, especially concerning the findings involving his credibility. He claims that the 1984 injury forced him to stop working at UPS seventeen months after the trial and that his credibility at trial as to his physical restrictions should be reevaluated. Burglund asserts that refusing to reopen the record to admit evidence on what the lower court viewed as a central issue of this case, whether he could continue working indefinitely in his current position, was a manifest abuse of discretion that compels reversal of the lower court's decision.

The Workers' Compensation Court stated that it cannot go back and retry a matter simply because there have been subsequent developments. The court held, however, that it does have jurisdiction to consider subsequent changes in his disability under § 39-71-2909, MCA, and that Burglund's remedy is to file a new petition. We conclude that the Workers' Compensation Court did not abuse its discretion in so holding.

ISSUE 2

Did the Workers' Compensation Court err in determining that Liberty is liable under §§ 39-71-705 through -708, MCA (1983), for payment to Burglund of 100 weeks of PPD benefits, representing a twenty percent disability?

Permanent partial disability benefits available under §§ 39-71-705 through -708, MCA (1983), are commonly referred to as "indemnity benefits." Liberty and UPS assert that the triggering event for an award of indemnity benefits is a physical restriction arising from an injury that has or may adversely affect a person's ability to work in the future. They argue that because Burglund has no physical restrictions on his work or recreational activities that as a matter of law he is not entitled to indemnity benefits.

Indemnity benefits are based upon the schedule of injuries set forth in § 39-71-705, MCA (1983). In the case of a non-scheduled injury, such as the back injury found in this case, the maximum number of weeks of benefits is 500 weeks. Section 39-71-706, MCA (1983).

10

To determine an indemnity benefit claim under §§ 39-71-705 through -708, MCA (1983), the court must consider the claimant's age, education, work experience, pain and disability, actual wage loss, and loss of future earning capacity. Carroll v. Wells Fargo Armored Serv. Corp. & CNA (1990), 245 Mont. 495, 499, 802 P.2d 618, 621 (citing Holton v. F.H. Stoltze Land and Lumber Co. (1981), 195 Mont. 263, 266, 637 P.2d 10, 12). As we have previously stated, the purpose of indemnity benefits is to indemnify the injured worker for "possible" loss of future earning capacity, rather than any "actual" loss of earning capacity. Stuker, 822 P.2d at 107.

Burglund may not have a present physical restriction on his work; however, this does not mean that he will not suffer a possible loss of future earning capacity as a result of his injury. One-half of the twenty percent disability award is represented by the impairment award, which is strictly a medical determination. UPS attacked this medical determination before the Workers' Compensation Court but did not appeal this issue. Given the ten percent impairment rating, the court awarded an additional ten percent for factors other than medical impairment. The court's award of an additional ten percent does not, as a matter of law, require that Burglund be currently physically restricted in either his employment or his recreational activities. It is an award to compensate future possible loss of earning capacity. There is sufficient evidence in the record which supports the court's conclusion that Burglund could possibly be forced to quit his

11

position with UPS and therefore suffer future possible loss of earning capacity.

We therefore determine the Workers' Compensation Court did not err in concluding that Liberty is liable under §§ 39-71-705 through -708, MCA (1983), for payment to Burglund of 100 weeks of permanent partial disability benefits, representing a twenty percent disability.

We affirm both issues raised on appeal.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12