STEVEN K. BURGLUND,

Petitioner and Respondent,

v.

LIBERTY MUTUAL FIRE INSURANCE CO.,

Respondent and Appellant, Insurer for

UNITED PARCEL SERVICE,

Employer.

No. 96-558.

Submitted on Briefs November 20, 1997.

Decided December 16, 1997.

Appeal from the Workers' Compensation Court.

Honorable Mike McCarter, Judge.

Affirmed.

For Appellant: Larry W. Jones, Senior Attorney, Liberty Mutual

Fire Insurance Company, Missoula.

For Respondent: Darrell S. Worm; Ogle & Worm, Kalispell. [286 Mont. 135]

JUSTICE LEAPHART delivered the Opinion of the Court.

Liberty Mutual Fire Insurance Co. (Liberty) appeals from the decision of the Workers'

Compensation Court finding that Steven K. Burglund's (Burglund's) current disability was caused by his 1984 work injury and was, therefore, not an occupational disease. We affirm.

Background

This Court previously reviewed a related matter at Burglund v. Liberty Mut. Fire Ins. Co. (1996), 279 Mont. 298, 927 P.2d 1006 (hereinafter Burglund I). A thorough recitation of the facts appears in that opinion. We review only the facts relevant to this appeal. Burglund was injured while performing his duties as a package car driver at United Parcel Service (UPS) on February 14, 1984. Burglund was diagnosed with L5-S1 spondylosis and underwent surgery for that condition in 1991. Burglund was unable to work prior to the surgery, but resumed his position at UPS on June 1, 1991. Thereafter, his low-back condition worsened and in 1995 he resigned his position because he was unable to perform his duties as a package car driver.

Liberty concluded that Burglund's inability to work was a result of an occupational disease arising subsequent to his 1984 injury and began paying temporary total disability benefits. When Burglund reached maximum medical improvement, Liberty began paying a $10,000 award under Sec. 39-72-405(2), MCA (1993). Burglund, however, petitioned the Workers' Compensation Court claiming his condition was a result of the 1984 injury rather than an occupational disease and requesting an award of attorney fees and costs. The Workers' Compensation Court found that Burglund's condition was a result of his 1984 injury, and that Liberty failed to satisfy its burden of showing that Burglund's condition was not a natural progression of the 1984 injury. As a result, the Workers' Compensation Court concluded that Burglund's condition was not an occupational

disease and awarded attorney fees and costs. Liberty appeals from the decision of the Workers' Compensation Court.

Discussion

We set forth our standard of review in Burglund I: "This Court will uphold the Workers' Compensation Court's findings of fact if they are supported by substantial credible evidence. We review the trial court's conclusions of law to determine if they are correct." Burglund I, 927 P.2d at 1008 (citations omitted). The sole issue for our review [286 Mont. 136] is whether the Workers' Compensation Court erred in finding that Burglund's condition resulted from his 1984 injury and subsequent surgery in 1991 and, therefore, erred in finding that Burglund's condition is not the result of an occupational disease.

Under Sec. 39-72-102(10), MCA (1993), " `[o]ccupational disease' means harm, damage, or death as set forth in 39-71-119(1) [injury and accident defined] arising out of or contracted in the course and scope of employment and caused by events occurring on more than a single day or work shift. ..." The crux of Liberty's argument is that Burglund's low-back condition accelerated while performing his duties at UPS between 1991 and 1995 and that the acceleration, rather than the original injury in 1984, caused his current disability.

The Workers' Compensation Court noted that the claimant has the initial burden of showing by a preponderance of the evidence that he is entitled to compensation. Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 483, 512 P.2d 1304, 1312. The court found that Burglund met that burden in this case by establishing a clear connection between his current condition and his 1984 injury. That connection was established through the testimony of Dr. Ned Wilson who testified that

the deterioration of Burglund's condition was multifactorial. While Dr. Wilson could not determine with any precision what effect Burglund's work at UPS from 1991 to 1995 had on his low-back condition, Dr. Wilson opined that the 1984 injury was the material and substantial cause of Burglund's disability.

The burden of proof then shifted to Liberty to establish that Burglund's degenerative low-back condition was accelerated by a subsequent occupational disease. Walker v. United Parcel Service (1993), 262 Mont. 450, 456, 865 P.2d 1113, 1117. More specifically, Liberty had to prove that Burglund's increased disability was not the result of a natural progression of the condition caused by the 1984 injury. The Workers' Compensation Court concluded that Liberty failed to satisfy that burden.

Liberty relies on Caekaert v. State Comp. Mut. Ins. Fund (1994), 268 Mont. 105, 885 P.2d 495, to support its argument. This Court explained in Caekaert that "[a] later injury is compensable by the original carrier if it is a direct and natural result of a compensable primary injury, and not the result of an independent intervening cause attributable to the claimant." Caekaert, 885 P.2d at 499 (citing Rightnour v. Kare-Mor, Inc. (1987), 225 Mont. 187, 189, 732 P.2d 829, 830-31). Caekaert involved a journeyman plumber who owned an independent poultry business. Mr. Caekaert (Caekaert) suffered from [286 Mont. 137] carpal tunnel syndrome and underwent several surgeries for his condition between 1988 (date of diagnosis) and 1993 (date of his last surgery). Thereafter, he petitioned the Workers' Compensation Court for an award of medical expenses and disability benefits. The Workers' Compensation Court found that Caekaert suffered

from an occupational disease, but found that because Caekaert's work in his poultry business aggravated his carpal tunnel, the State Fund was not responsible for the medical expenses or temporary disability benefits. We reversed and held that State Fund did not offer substantial evidence that a second event or exposure (the work at the poultry business) caused Caekaert's disability. Caekaert, 885 P.2d at 501. In making that determination we focused on the medical evidence offered at trial.

Likewise, Liberty claims that Burglund's work at UPS from 1991 to 1995 constituted a secondary exposure that aggravated his lower back and caused his disability. However, the medical evidence at Burglund's trial substantially supported the Workers' Compensation Court's finding that Burglund's condition was caused by a natural progression of his 1984 injury and 1991 surgery. While Dr. Wilson testified that Burglund's work from 1991 to 1995 may have hastened the degenerative process that Burglund experienced, he further testified that such work was not a substantial cause of the degeneration and that Burglund's low-back condition would have deteriorated even if he had not resumed his duties at UPS. The Workers' Compensation Court's finding that Burglund's disability was caused by the 1984 injury and 1991 surgery is supported by substantial evidence. The Workers' Compensation Court correctly concluded that Burglund's disability is not an occupational disease. Affirmed.

JUSTICES NELSON, REGNIER, TRIEWEILER and GRAY concur.