No. 97-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


WILLIAM POLK,

Petitioner and Appellant,

v.

PLANET INSURANCE CO.,

Insurer and Respondent,

KOCH AGRICULTURE, INC.,

Employer.


APPEAL FROM:     Workers' Compensation Court, State of Montana
                 Honorable Mike McCarter, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Lawrence A. Anderson, Howard F. Strause, Attorneys at Law,
Great Falls, Montana

For Respondent:

Sara R. Sexe; Marra, Wenz, Johnson & Hopkins,
Great Falls, Montana


Submitted on Briefs: November 13, 1997

Decided: December 30, 1997

Filed:

_____

Clerk

Justice W. William Lepahart delivered the Opinion of the Court.

Appellant William Polk (Polk) appeals from the February 26, 1997, Judgment and Order of the Montana Workers' Compensation Court, affirming the findings of fact, conclusions of law, and final order of the hearings examiner of the Department of Labor.

Polk raises the following issues on appeal:

1. Did the Workers' Compensation Court err in holding that Polk had failed to prove causation?

2. Did the Workers' Compensation Court err in holding that the unlawful medical panel procedure was not reversible error?

3. Did the Workers' Compensation Court err in reviewing the decision of the hearings examiner under the clearly erroneous standard of review?

Because we find issues one and three dispositive, we will not address issue two.

Factual and Procedural Background

Koch Agriculture, Inc. (Koch) owns a Great Falls factory which processes seeds, such as flax, rape, linseed, and mustard, into oil and meal sold for cattle feed. Appellant William Polk (Polk) worked in the factory owned by Koch and its predecessors from 1985 to 1993. Polk performed physical labor at the factory, including carrying and stacking meal sacks, shoveling seed, sacking and unsacking meal, blowing dust residue off of the walls, and cleaning the machinery. Polk also scraped moldy grain from the inside of elevator and machine pits.

Koch's factory is housed in one building, which is 150 feet long and 70 feet wide. The building has one two-foot ventilation fan on the ceiling. Because the process of transporting, cleaning, and milling the seeds generates dust, additional fans were occasionally brought in to blow the airborne dust away from workers. Though Polk's job subjected him to dust, fumes, and airborne mold, Koch did not provide him with a dust mask until 1992. After 1992, Polk was given a paper mask, which often became clogged with dust and sweat after a few hours.

In April 1991, Polk began experiencing health problems. He suffered from chills, fever, and persistent diarrhea. In February 1992, Polk was hospitalized for fever and chills. He testified that thereafter he "never felt good." He tired easily, had trouble breathing, and lost nearly 40 pounds. In November 1993, Polk was again hospitalized for ten days for fever, chills, and a cough. Shortly after, Polk's doctor ordered him to leave work.

Polk continues to suffer severe shortages of breath and lightheadedness. He has lost nearly half of his lung function, and his low blood oxygen level frequently requires him to use supplemental oxygen. For about 30 years, Polk smoked one and a half packs of cigarettes a day. He attempted to quit smoking in December 1993, but still smokes occassionally.

In January 1994, Polk filed a claim for occupational disease benefits against Koch

and its insurer, Respondent Planet Insurance Company (Planet). Pursuant to õõ 39-72-601 through -613, MCA, the Department of Labor and Industry appointed a panel of three doctors to evaluate Polk's claim. Polk was examined by Drs. David Anderson and J. Michael Sadaj. Dr. Anderson concluded that Polk suffered from an occupational disease, while Dr. Sadaj concluded he did not. A third physician, Dr. Thomas Thigpen, reviewed the records and reports of Drs. Anderson and Sadaj. Dr. Thigpen did not meet with the other two doctors, but issued a report to the Department of Labor on behalf of the panel concluding that Polk's condition was not the result of an occupational disease.

Polk appealed this determination to the hearings unit of the Department of Labor and Industry. The eight medical experts whose testimony was presented at the hearing had either examined Polk or reviewed his medical records. Each came to a different conclusion as to the cause of Polk's pulmonary condition. Dr. Anderson, a panel doctor, concluded that Polk's condition was caused primarily by asthmatic bronchitis, hypersensititivy pneumonitis, and some emphysema. Hypersensitivity pneumonitis, or "farmer's lung," can be caused by exposing the lungs to grain, molds, and other airborne irritants. Emphysema is typically caused by smoking. Dr. Anderson stated that the asthmatic component of Polk's condition was "likely related to his exposure to toxic organic dusts."

Drs. Sadaj and Thigpen, the other panel doctors, concluded that Polk suffers from "chronic obstructive pulmonary disease and chronic respiratory insufficiency as a result of long term heavy smoking."

Polk's treating physician, Dr. Holly Strong, concluded that Polk suffers from hypersensitivity pneumonitis, occupational asthma, and slight emphysema. She also diagnosed Polk with bronchiectasis, which can be caused by fungus associated with organic dust and by hypersensitivity pneumonitis. Dr. Jeffrey Kessler, a radiologist, performed a high-resolution CT scan on Polk's lungs and determined that Polk suffers from hypersensitivity pneumonitis, severe bronchiectasis, and minimal emphysema.

Dr. Stephen Demeter, an expert retained by Planet, testified that he found no evidence that Polk suffers from hypersensitivity pneumonitis, or of any occupational disease. He concluded that Polk has emphysema caused by smoking and some bronchiectasis, possibly caused by a past episode of pneumonia. Planet also offered the expert deposition testimony of Dr. Robert Merchant, who concluded that Polk suffers from emphysema and some bronchiectasis. Polk's expert, Dr. Dana Headapohl, concluded that Polk suffers from hypersensitivity pneumonitis caused by his exposure to mold and organic dust while working at Koch.

After a hearing, the hearings examiner found that Polk is not suffering from an occupational disease. In March 1996, Polk appealed to the Workers' Compensation Court, arguing that the procedure used by the three-member medical panel was unlawful and that the hearings examiner had failed to apply the appropriate standard of causation.

The Workers' Compensation Court held that the medical panel had acted improperly by

failing to meet to discuss Polk's case, but that this was not reversible error. It further found that the hearings examiner's finding that Polk does not suffer from an occupational disease is not clearly erroneous and is supported by substantial evidence. Polk appeals from this decision.

## Standard of Review

We review the Workers' Compensation Court's findings of fact to determine whether the findings are supported by substantial credible evidence. This Court reviews conclusions of law to determine whether the lower court's interpretation of the law is correct. Kloepfer v. Lumbermen's Mut. Cas. Co. (1996), 276 Mont. 495, 916 P.2d 1310.

## Discussion

Did the Workers' Compensation Court err in holding that Polk had failed to prove causation and in reviewing the decision of the Department of Labor under the clearly erroneous standard?

## A. Appropriate Standard of Causation

The Occupational Disease Act of Montana (the Act) is codified at Title 39, Ch. 72, MCA. To qualify for benefits under the Act, the claimant must prove that his or her employment is a proximate cause of the claimant's condition. Under õ 39-72-408, MCA:

Occupational diseases shall be deemed to arise out of the employment only if:

(1) there is a direct causal connection between the conditions under which the work is performed and the occupational disease;

(2) the disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;

(3) the disease can be fairly traced to the employment as the proximate cause;

(4) the disease does not come from a hazard to which workmen would have been equally exposed outside of the employment;

(5) the disease is incidental to the character of the business and not independent of the relation of employer and employee.

Polk recognizes that to prevail, he must prove that his lung condition was proximately caused by his exposure to dust and other irritants at Koch. However, he asserts that the hearings examiner and the four doctors who concluded that he did not suffer from an occupational disease applied the wrong standard of causation.

Under Montana law, a worker may receive pro rata compensation "[i]f an occupational disease is aggravated by any other disease or infirmity not itself compensable or if disability or death from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease." Section

39-72-706(1), MCA (emphasis added). " 'Occupational disease' means harm, damage, or death . . . arising out of or contracted in the course and scope of employment and caused by events occurring on more than a single day or work shift." Section 39-72-102(10), MCA (emphasis added). Polk argues that in light of these statutes and our case law construing them, he must only show that a work-related exposure aggravated or contributed to his illness. He asserts that the testimony of several of the doctors, and in turn the conclusion of the hearings examiner, was based on the misconception that to satisfy causation, Polk had to prove that the occupational exposures were the major factor causing his health problems.

Indeed, this Court has held that "an employer accepts his employee with all of his injuries and diseases" and, thus, that the test for compensability is whether the job-related incident significantly aggravated the preexisting condition. Ridenour v. Equity Supply Co. (1983), 204 Mont. 473, 665 P.2d 783; see also Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 777 P.2d 862. For example, in Ridenour, 665 P.2d at 784, the claimant was a long-term smoker who worked in a dusty grain-processing plant. After an incident of grain inhalation, the claimant developed a cardiopulmonary disease. Ridenour, 665 P.2d at 784. This Court held that "diseases are subject to aggravation and acceleration" and that the grain inhalation had aggravated the claimant's preexisting lung disease. Ridenour, 665 P.2d at 788. Thus, we found that he was entitled to pro rata compensation. Ridenour, 665 P.2d at 788.

Planet argues that the aggravation statute does not relieve the claimant of the burden of proving proximate cause, but that Polk is still required to prove a direct causal connection between the work-related factors and his resulting condition. We agree with Planet that the aggravation statute, õ 39-72-706, MCA, does not circumvent the proximate cause requirement of õ 39-72-408, MCA. However, Planet contends that to prove proximate cause, Polk must show that occupational exposures were a substantial contributing factor to his health problem.

In light of the proximate cause statute and the aggravation statute, we agree with the Workers' Compensation Court that "occupational aggravations of preexisting non-occupational diseases are compensable, as are occupational diseases which are aggravated by non-occupational factors." As we held in Ridenour, the test for compensability under the Act is whether occupational factors significantly aggravated a preexisting condition, not whether occupational factors played the major or most significant role in causing the claimant's resulting disease.

Other jurisdictions, such as New Mexico, have come to the same conclusion when considering the effect of numerous factors, occupational and non-occupational, on pulmonary diseases:

These cases have dealt specifically with the analytical and testimonial difficulties inherent in determining compensability of diseases caused by the combined effect of smoking and work-related exposures to dust, asbestos, radiation, and various toxic fumes. . . .  The majority rule in states with a statutory scheme similar to New Mexico's allows compensation without a showing that work-related exposures were the predominant cause of the disease or death.

Buchanan v. Kerr-McGee Corp. (N.M. App. 1995), 908 P.2d 242, 249.  That court noted that "[t]he work-related cause may, in fact, be a minor factor  so long as the worker establishes that, as a matter of medical probability, it was a cause of the disability."  Buchanan, 908 P.2d at 249.

Therefore, we hold that Polk need not prove that occupational exposures were the major or substantial factor causing his chronic pulmonary condition.  Rather, Polk must prove that he is suffering from a disease that is proximately caused by his employment or that exposure to dust and other irritants while in the course of his employment at Koch contributed to or aggravated a preexisting condition.  Having stated the appropriate test for causation, we proceed to apply it to this case.

B. Workers' Compensation Court's Standard of Review

The Workers' Compensation Court agreed that õ 39-72-408, MCA (proximate cause) "must be read together with õ 39-27-706, MCA, which provides for apportionment between occupational and non-occupational causes."   Nonetheless, the Workers' Compensation Court went on to hold that the findings of the Department of Labor's hearings examiner were not clearly erroneous.

Under õ 39-72-612, MCA, the judge of the Workers' Compensation Court may overrule the decision of the Department of Labor when it is:

(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) affected by other error of law;
(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Workers' Compensation Court erred in reviewing only for clearly erroneous findings of fact.  Whether the hearings examiner applied the appropriate test for proximate causation is a question of law.  Thus, pursuant to õ 39-72-612, MCA, the Workers' Compensation Court should have reviewed the Department of Labor's decision not only for clearly erroneous findings of fact, but also to determine whether the decision was affected by an error of law.

C. Application of Appropriate Standard of Causation in this Case

As noted by the hearings examiner, "[e]xamination and analysis of [Polk]'s condition as well as the cause of that condition by numerous doctors resulted in one group of doctors concluding [Polk] suffers from an occupational disease and another group

of doctors concluding [Polk] does not suffer from an occupational disease." Based on the presumption of correctness given to the medical panel's adverse decision and on the hearings examiner's determination that the doctors who found no occupational disease were more qualified and presented better-reasoned conclusions, the examiner concluded that Polk did not suffer from an occupational disease. Polk argues that had the hearings examiner reviewed the evidence under the appropriate standard, to determine whether an occupational exposure contributed to or aggravated Polk's condition, rather than simply adopted these doctors' conclusion that Polk does not suffer from an occupational disease, the balance of evidence would have been tipped in his favor.

As stated above, each doctor came to different conclusions as to the cause of Polk's pulmonary disease. As noted by Dr. Merchant, placing a name on the myriad of symptoms Polk suffers is difficult: "[O]ne of the reasons that we term it 'COPD' [chronic obstructive pulmonary disease] rather than . . . going past that and actually saying, 'You have chronic bronchitis versus emphysema,' is that very often you have a mixture of the various conditions, because some of the things that cause one of them can also cause the others."

Four of the eight doctors involved in this case, Drs. Sadaj, Thigpen, Demeter, and Merchant, concluded that Polk did not suffer from hypersensitivity pneumonitis, or any other occupational disease. Based on their testimony, the hearings examiner concluded that Polk was not entitled to compensation. However, the testimony of three of these four doctors could support a finding that the conditions to which Polk was exposed at Koch aggravated or contributed to his pulmonary condition.

Dr. Merchant concluded that Polk suffers from emphysema and some bronchiectasis. However, Dr. Merchant also testified that occupational exposures "would be very likely to play a significant role in exacerbating [Polk's] emphysema." Dr. Thigpen, the doctor who reported to the Department of Labor on behalf of the medical panel, concluded that hypersensitivity pneumonitis was not the most likely cause of Polk's pulmonary condition, but did not exclude it as a possibility. Further, Dr. Thigpen stated that "if one does have any type of underlying lung disease (and that includes emphysema and chronic bronchitis) exposure to various types of dust and other irritants will aggravate claimant's condition." [Emphasis added]. Dr. Sadaj, another panel doctor, concluded that Polk suffers from chronic obstructive pulmonary disease and chronic respiratory insufficiency as a result of long-term heavy smoking. However, in support of this conclusion, Dr. Sadaj testified: "The only way that I could say the occupation was a major part in his problem was if he has hypersensitivity pneumonitis."

As stated above, Polk need not prove that the occupational exposures, as compared to smoking or other contributing factors, were the "major" or primary factor causing his present condition. Rather, as long as occupational exposures substantially aggravated Polk's pulmonary condition, he is entitled to pro rata compensation for his injuries. However, in concluding that he did not suffer from an occupational disease, Drs. Merchant, Sadaj, and Thigpen were operating under the mistaken assumption that, to qualify him for occupational disease benefits, Polk's exposure to dust and other irritants at Koch had to be the major factor causing his pulmonary condition. When the testimony of Drs. Merchant, Sadaj, and Thigpen is reviewed under the correct standard of causation and added to the testimony of the four doctors who concluded that Polk indeed suffers from an occupational disease, it could support a finding that occupational factors contributed to or aggravated Polk's pulmonary disease.

By adopting the doctors' threshhold requirement that Polk's occupational exposures be the major or primary factor causing his medical condition rather than reviewing their testimony to determine whether it supports a finding that an occupational exposure contributed to or aggravated Polk's condition, the hearings examiner applied the wrong standard of causation. We hold that the Workers' Compensation Court erred in not overruling the Department of Labor's decision based on this error of law.

Based on the foregoing, we reverse the decision of the Worker's Compensation Court and remand to that court for further proceedings consistent with this opinion.

/S/  W. WILLIAM LEAPHART


We concur:

/S/  J. A.  TURNAGE

/S/  TERRY N. TRIEWEILER

/S/  JAMES C. NELSON

/S/  JIM REGNIER