No. 04-576

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 97

MONTANA STATE FUND,

Petitioner and Appellant,

v.

CARL MURRAY and INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA,

Respondent/Claimant and
Respondent/Insurer.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2002-0700
Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Thomas E. Martello, Special Assistant Attorney General,
Montana State Fund, Helena, Montana

For Respondents:

Bernard J. Everett; Knight, Dahood, Everett & Sievers
Anaconda, Montana (for Respondent Carl Murray)

Leo S. Ward, Attorney at Law; Browning, Kaleczyc, Berry &
Hoven, Helena, Montana (for Respondent Indemnity Insurance
Company of North America)

Submitted on Briefs:  February 15, 2005

Decided:  April 19, 2005

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     The Workers' Compensation Court determined that the Montana State Fund, rather than Indemnity Insurance Company of North America, is the workers' compensation insurer liable for compensation payable for Carl Murray's occupational disease, including disability and medical expenses for knee replacements.  The State Fund appeals, and we affirm.

¶2     While the State Fund raises the overall issue on appeal of whether the Workers' Compensation Court erred in holding the State Fund liable for Murray's occupational disease, it breaks that question down into three subissues which we restate and address individually:

¶3     1. Did the Workers' Compensation Court improperly rely on Dr. Nicholas Blavatsky's testimony?

¶4     2. Is the Workers' Compensation Court's finding that Murray's work at MSE Technology Applications, Inc., significantly contributed to his knee condition and his need for surgery supported by substantial credible evidence?

¶5     3. Did the Workers' Compensation Court err in concluding the State Fund, rather than Indemnity, is the liable workers' compensation insurer?

BACKGROUND

¶6     Murray suffered injuries in 1967 and 1974 which required removal of part or all of the cartilage in both of his knees.  He remained physically active both in the jobs he performed and in vigorous recreational activities.

¶7     In 1982, Murray began working for MSE Technology Applications, Inc. (MSE) in Butte, Montana, as a security guard and mail carrier. He continued to work there for the next eighteen and one-half years. From approximately 1989 to 2000, he worked as a tool room attendant, issuing and repairing tools for other MSE employees. Much of Murray's work involved standing on concrete or asphalt.

¶8     From 1993 to 2000, Murray suffered several episodes of knee pain, swelling and effusion in connection with his personal recreational activities. Until 2000, he recovered quickly and resumed his active lifestyle after each episode. Nevertheless, physician Michael Gallagher advised him by 1996 that bilateral knee replacements were inevitable because his knees continued to degenerate.

¶9     In December of 2000, orthopedic surgeon Nicholas Blavatsky, who specialized in knee replacements and later performed Murray's knee replacement surgery, told Murray that the work at MSE had contributed to Murray's condition and need for surgery. Within a month, Murray filed an occupational disease claim and scheduled bilateral knee replacements. He had been given notice that his job at MSE was being phased out and knew he would need time to recover from his impending knee surgeries. As a result, Murray resigned from his employment with MSE on January 12, 2001.

¶10    The State Fund, MSE's workers' compensation insurer at the time Murray filed his claim, began paying Murray benefits under a reservation of rights. It petitioned the Workers' Compensation Court for a determination that Indemnity, MSE's prior workers' compensation insurer, is liable for compensation for Murray's bilateral knee condition.

¶11 Murray testified at the hearing on the State Fund's petition. The Workers' Compensation Court admitted depositions of Murray, Gallagher, Blavatsky, and Dr. Gary M. Rapaport into evidence. Rapaport, an occupational medicine specialist, had examined Murray in August of 2001 at the request of the Montana Department of Labor and Industry. In addition, the State Fund offered into evidence, and the court admitted over Murray's objection, a letter in which Rapaport responded to specific questions the State Fund submitted to him after his deposition.

¶12 In detailed findings of fact and conclusions of law, the Workers' Compensation Court reviewed the evidence and determined it established that Murray's work both significantly aggravated his preexisting bilateral knee condition and led to or accelerated his need for knee replacement surgery. The court determined Murray is entitled to the indemnity and medical benefits available under the Montana Occupational Disease Act and concluded that, as the insurer at risk during Murray's last occupational exposure, the State Fund is liable for paying the benefits. The Workers' Compensation Court subsequently denied the State Fund's request for reconsideration. The State Fund appeals.

STANDARDS OF REVIEW

¶13 We review the Workers' Compensation Court's findings of fact to determine whether they are supported by substantial credible evidence. We apply the same standard of review when the record contains both deposition medical evidence and other trial evidence relevant to the medical issue. *See Wilson v. Liberty Mut. Fire Ins.* (1995), 273 Mont. 313, 317, 903 P.2d 785, 787-88 (citation omitted). We review the Workers' Compensation Court's

4

conclusions of law to determine whether they are correct. *Hiett v. Missoula County Public Schools*, 2003 MT 213, ¶ 15, 317 Mont. 95, ¶ 15, 75 P.3d 341, ¶ 15 (citation omitted).

DISCUSSION

¶14 1. Did the Workers' Compensation Court improperly rely on Blavatsky's testimony?

¶15 The State Fund argues that the Workers' Compensation Court improperly relied on Blavatsky's testimony because Blavatsky's medical records do not reflect a relationship between Murray's knee problems and his work at MSE. This argument has no merit.

¶16 Blavatsky was not specifically asked during his deposition whether he knew Murray stood or walked on concrete at work. In response to questioning, however, Blavatsky testified that working on concrete floors over repeated intervals can tend to result in osteoarthritis in the knees. Blavatsky stated:

> It's been shown that that kind of activity over repeated intervals--it may be years on end--can exacerbate that condition. And it's been shown in people that are diesel mechanics and waitresses and other occupations that have this kind of problem, that they tend to develop osteoarthritic changes more so than counterparts that are not on hard surfaces like that.

As the Workers' Compensation Court noted in denying the State Fund's motion for reconsideration, Blavatsky's testimony "does not show that he was unaware of [Murray's] standing on concrete at work for long periods of time." In fact, the question about the effect of working on concrete, and his answer to that question, suggest the opposite.

¶17 Under this argument, the State Fund also criticizes the Workers' Compensation Court for "disregarding" the opinion of Gallagher, who "could not express an opinion on the impact of work activities at MSE on Mr. Murray's knees." While Gallagher declined to express an

5

opinion on the impact of work activities on Murray's knees, he also testified he would defer to Blavatsky's judgment on that question because he had not been involved in Murray's treatment since 2000.

¶18    Finally, the State Fund advances a letter written by Rapaport which differs from the Workers' Compensation Court finding that Murray's work at MSE significantly contributed to his knee condition.  The State Fund analogizes this case to *Burglund v. Liberty Mut. Fire Ins. Co.* (1997), 286 Mont. 134, 950 P.2d 1371.  There, the Workers' Compensation Court found the worker's disability was caused by a prior work injury, not by an occupational disease, in spite of the fact that his work may have hastened the degenerative process. We affirmed, determining the court's finding that the worker's condition was caused by a natural progression of the prior injury was supported by substantial evidence.  *Burglund*, 286 Mont. at 137, 950 P.2d at 1372-73.

¶19    The question underlying whether a finding is supported by substantial evidence is not whether substantial evidence would support a different finding.  The question is whether substantial evidence supports the finding the Workers' Compensation Court actually made. *Liberty Northwest Ins. Corp. v. Champion Intern. Corp.* (1997),  285 Mont. 76, 79, 945 P.2d 433, 435 (citation omitted).  Thus, the fact that we affirmed a Workers' Compensation Court finding in *Burglund* that the claimant's disability was not caused by occupational disease has no relevance here.

¶20    We conclude the Workers' Compensation Court properly relied on Blavatsky's testimony.

6

¶21 2. Is the Workers' Compensation Court's finding that Murray's work at MSE significantly contributed to his knee condition and his need for surgery supported by substantial credible evidence?

¶22 We observe at the outset that the State Fund asserts the Workers' Compensation Court determined that Murray's "work activities at MSE substantially aggravated his underlying osteoarthritis." The State Fund then advances *Polk v. Planet Ins. Co.* (1997), 287 Mont. 79, 951 P.2d 1015, for the proposition that occupational factors must substantially aggravate an underlying condition to render the condition compensable. It asserts the overwhelming evidence of record reflects the likelihood Murray's osteoarthritis began with the 1967 and 1974 injuries and worsened during pre-MSE employment and his recreational activities. According to the State Fund, the effect of MSE employment on Murray's knees was "infinitesimal" rather than substantial. The State Fund entirely misses the mark.

¶23 First, the Workers' Compensation Court found that "[Murray's] work at MSE significantly contributed to [his] knee condition and his need for surgery." The court did not use the "substantially aggravated" language. Second, we rejected the "substantially aggravated" argument in *Polk*, 287 Mont. at 85, 951 P.2d at 1019, stating the test for compensability under the Occupational Disease Act as whether occupational factors significantly aggravated a preexisting condition. Thus, the State Fund's reliance on the "substantially aggravated" test, and its application of that test to the evidence here, is incorrect.

7

¶24 The State Fund relies heavily on Rapaport's revised opinion in his post-deposition letter to the State Fund's counsel in September of 2003. Ultimately, the Workers' Compensation Court gave little weight to Rapaport's post-deposition letter on grounds that it was not sworn, was not subject to cross-examination and "was [written] in reply to carefully framed written questions of counsel." The State Fund contends the Workers' Compensation Court erred in giving the letter little weight. We will not, however, substitute our judgment for that of the Workers' Compensation Court where the issue relates to the weight given to certain evidence or the credibility of witnesses. *Best v. State Compensation Ins. Fund* (1996), 276 Mont. 302, 306, 916 P.2d 108, 110.

¶25 Evidence from several sources supports the Workers' Compensation Court's finding that Murray's work at MSE significantly contributed to his knee condition. Murray, found by the Workers' Compensation Court to be "a wholly credible witness," testified he stood or walked on cold concrete floors at MSE all but two or three hours a day of his 40 or more hour work week. In Rapaport's report, appended to his deposition, he acknowledged Murray's 1967 and 1974 injuries but stated subsequent activities, including Murray's recreational activities and work activities, had contributed to the advancing degeneration of both knees. Although Rapaport noted Murray's medical records referenced no specific occupational injury, he stated it appeared Murray was required to walk, bend, lift and climb on concrete surfaces, which may have contributed in part to his degenerative joint disease. Rapaport apportioned 30 to 40 percent of Murray's condition to work activities. Blavatsky agreed with Rapaport that at least 30 per cent of Murray's knee condition was attributable

8

to walking and standing on hard surfaces. While conceding that Murray's old knee injuries were "huge initiating factors in his osteoarthritis," Blavatsky testified that "in all fairness, work-related activities have some measure."

¶26    We conclude the Workers' Compensation Court's finding that Murray's MSE employment significantly contributed to his knee condition is supported by substantial credible evidence.

¶27    3. Did the Workers' Compensation Court err in concluding the State Fund, rather than Indemnity, is the liable workers' compensation insurer?

¶28    Finally, the State Fund asserts that, even if the Workers' Compensation Court's finding that Murray's employment significantly contributed to his knee condition is supported by substantial credible evidence, his occupational disease occurred while Indemnity was MSE's workers' compensation insurer. The State Fund points to Murray's deposition testimony that, as of October 1, 2000, when the State Fund became MSE's workers' compensation insurer, he was sitting 40 to 50 percent of the time he was at work. The State Fund also points to Murray's statements in his exit interview with MSE that he was leaving the company because his job had been reduced to half time and his workload was "too light."

¶29    Section § 39-72-303(2), MCA, provides that the insurer providing coverage at the earlier of (a) the date an occupational disease was first diagnosed, or (b) the date the employee "knew or should have known that the condition was the result of an occupational disease" is liable for the worker's occupational disease. Murray testified he was unaware that standing on concrete at work was a cause of his knee condition until Blavatsky so advised

9

him in December of 2000. At that time, the State Fund was MSE's workers' compensation insurer. The State Fund points to nothing which indicates Murray should have been aware of the connection between his knee condition and his employment earlier. We conclude the Workers' Compensation Court correctly determined the State Fund is the liable workers' compensation insurer.

## CONCLUSION

¶30    We hold the Workers' Compensation Court did not err in holding the State Fund liable for compensation for Murray's occupational disease. Affirmed.


/S/ KARLA M. GRAY



We concur:



/S/ JAMES C. NELSON

/S/ PATRICIA O. COTTER

/S/ JOHN WARNER

/S/ JIM RICE


10