

DA 07-0579

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 443

DEAN L. KRATOVIL,

        Petitioner and Appellee,

   v.

LIBERTY NORTHWEST INSURANCE
CORPORATION,

        Respondent/Insurer and Appellant.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2006-1551
                  Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Larry W. Jones, Law Offices of Larry W. Jones, Missoula, Montana

        For Appellee:

        R. Russell Plath, Halverson, Sheehy & Plath, P.C., Billings, Montana

Submitted on Briefs:  July 16, 2008

Decided:  December 29, 2008

Filed:

_____
                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Dean Kratovil (Kratovil) worked as a plumber/pipefitter for G & T Plumbing & Mechanical (G & T) from April 2003 until July 18, 2004.  After leaving G & T, he filed both a workers' compensation injury claim and an occupational disease claim.  The claims were submitted to Liberty Northwest Insurance Company (Liberty), G & T's insurer during Kratovil's employment.  Liberty denied liability, asserting that Kratovil had received the injuries that primarily prohibited him from working in a motorcycle accident, and that his earliest symptoms of occupational disease appeared before Kratovil began working for G & T.  In July 2007, the Workers' Compensation Court (WCC or court) held Liberty liable for Kratovil's occupational disease claim.  The court determined Kratovil had an employment-related occupational disease that may have been exacerbated by the motorcycle accident but was, nonetheless, compensable under the Occupational Disease Act (ODA).  The WCC also concluded that as the employer of last injurious exposure, G & T was statutorily liable.  Liberty appeals.  We affirm and remand.

## ISSUE

¶2    A restatement of the issue on appeal is:

¶3    Did the WCC correctly conclude that Kratovil was entitled to, and Liberty was liable for, benefits under the Occupational Disease Act?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Dean Kratovil was a heavy construction site plumber/pipefitter for approximately thirty years when injury and occupational disease forced him to stop working in July

2004. Prior to becoming a plumber, Kratovil worked finishing cement and formsetting concrete for several years. Both the concrete work and plumbing/pipefitting required regular use of heavy equipment, such as jackhammers and reciprocal saws. He claims he first experienced work-related hand and wrist soreness while working as a concrete formsetter.

¶5 After several years as a plumber/pipefitter, his symptoms grew worse, and during the early-to-mid 1990s, Kratovil began experiencing numbness in multiple fingers and pain in his hands and wrists. His work as a plumber/pipefitter, specializing in copper pipe, required that he perform several repetitive tasks such as hand sanding, reaming and deburring. These tasks subjected his hands and wrists to regular stress and over-use. At the time G & T hired him in April 2003, he had been experiencing hand pain and numbness for approximately ten years. He asserts G & T was aware of this condition at the time it hired him.

¶6 For several years after these symptoms emerged, resting his hands each weekend would ease the numbness and discomfort and allow Kratovil to return to work the following week and perform his job. Kratovil filed no workers' compensation or occupational disease claims relating to these symptoms during this time.

¶7 During his first prolonged construction job for G & T, Kratovil's pain and numbness increased significantly. He developed a weakness in his right hand, and rest no longer eased the symptoms. He began having trouble sleeping due to the pain. He purchased special gloves to provide wrist support and requested a specialized pipe cutting tool to minimize the twisting associated with his job-related tasks. G & T purchased the

3

cutting instrument for him. While Kratovil initially made no formal complaint to his supervisors at G & T, he states that he, his supervisor and co-workers regularly discussed the pain and numbness he was experiencing.

¶8 On March 26, 2004, Kratovil was involved in a motorcycle accident in which he injured his ribs, hips, and lower back. For several months afterwards, he had significant trouble with his hips and lower back. He subsequently had bilateral hip replacement surgery. Kratovil also had his left thumb x-rayed at the hospital after the accident because of some additional pain; however, he maintains he suffered no substantial injury to his hands or wrists during the accident. The x-rays of his thumb revealed no fracture or dislocation but identified a marked degenerative condition.

¶9 Subsequently, on June 17, 2004, Kratovil was injured on the job while operating a large thirty-to-forty pound drill. The drill hit an unseen object, possibly rebar or a large bolt, stopped abruptly, and severely twisted his hands and wrists. A co-worker was present and witnessed the accident. Kratovil did not report the accident or seek medical treatment. He continued working for G & T on this construction project until mid-July 2004, at which time his work on the project was complete and he was laid off. He has not worked since that time.

¶10 In January 2005, Kratovil saw Dr. Hansen, an orthopedic surgeon, and discussed several of his physical conditions, including continued pain associated with injuries received in his motorcycle accident and the pain and numbness in his hands and wrists. Among other things, Dr. Hansen diagnosed Kratovil with bilateral carpal tunnel syndrome, an advanced slack wrist condition of his right wrist, a left thumb joint injury

4

with partial dislocation and arthritis with a degenerative component. After seeing Dr. Hansen, Kratovil filed an original injury claim with G & T for the June 17, 2004 drill incident. G & T electronically filed the workers' compensation claim with Liberty on January 28, 2005. In April 2005, Kratovil filed a second claim for occupational disease relating to the pain and numbness in his hands and wrists. The report stated that the repetitive work as a plumber had caused, over time, both of his hands to become numb and weak. Liberty denied both the workers' compensation and the occupational disease claims.

¶11 On March 9, 2006, Kratovil filed a Petition for Hearing in the WCC. The WCC held a trial on June 27, 2006, and on July 17, 2007, the court issued its Findings of Fact, Conclusions of Law and Judgment in which it held that Liberty was liable for payment of occupational disease benefits to Kratovil.

¶12 Liberty filed a timely appeal of the WCC's ruling.

## STANDARD OF REVIEW

¶13 We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence. Substantial credible evidence is that evidence which a reasonable mind could accept as adequate to support a conclusion. Evidence will be considered substantial even if it is contradicted by other evidence, even if it is somewhat less than a preponderance, and even if it is inherently weak. *Gamble v. Sears*, 2007 MT 131, ¶ 20, 337 Mont. 354, ¶ 20, 160 P.3d 537, ¶ 20. We conduct de novo review of the WCC's conclusions of law in order to determine whether they are correct. *Gamble*, ¶ 20.

## DISCUSSION

5

¶14 *Did the WCC correctly conclude that Kratovil was entitled to, and Liberty was liable for, benefits under the ODA?*

¶15 Liberty challenges both the WCC's findings and its conclusions. The WCC made numerous findings pertaining to Kratovil's work history, the inception and progression of the condition of his hands and wrists, his motorcycle accident, and Dr. Hansen's diagnoses. It then rendered the following legal conclusions: (1) the 2003 ODA, the law in effect on Kratovil's last day of work, applied; (2) Kratovil had the burden of proving by a preponderance of the evidence that he was entitled to ODA benefits; (3) the legal standard for determining compensability under § 39-72-408, MCA (2003), is whether the claimant's employment significantly aggravated or contributed to his alleged occupational disease; (4) based on hearing testimony and medical records, Kratovil's employment significantly aggravated or contributed to his occupational disease; (5) under the "last employer" provision of § 39-72-303(1), MCA (2003), G & T is liable; (6) while the motorcycle accident may have contributed to Kratovil's problems, the record contains abundant evidence that Kratovil's hand/wrist condition predated the accident and his employment as a plumber/pipefitter significantly aggravated or contributed to his occupational disease; and (7) Liberty is liable for payment of occupational disease benefits to Kratovil.

¶16 On appeal, Liberty insists that Kratovil must prove that his bilateral hand conditions were caused "on a more probable than not basis . . . from his employment with [G & T]," and that Kratovil must prove that his work was 51% the cause of his illness.

The insurer asserts that Kratovil had failed to make the requisite showing that he has a compensable occupational disease requiring medical treatment on his hands and wrists.

¶17    Liberty also argues that benefits should be denied because Dr. Hansen indicated in a letter to the insurer liable for Kratovil's motorcycle accident that Kratovil's inability to work was approximately two-thirds related to the motorcycle accident and one-third related to his work-related hand condition. Liberty opines, therefore, that we must deny benefits under the ODA because Kratovil's inability to work is due primarily to non-employment-related circumstances.

¶18    Kratovil maintains that he suffers a work-related occupational disease for which he is entitled to receive ODA benefits. He argues that the evidence he presented, together with that of his supervisor Scott Branstetter and Dr. Hansen, was sufficient to establish that his bilateral upper extremity injuries were work-related, developed gradually over time, and were significantly aggravated by the tasks he performed as a plumber/pipefitter for G & T and previous employers. Additionally, he asserts, this evidence establishes that he was last injuriously exposed to the hazard of the disease while employed at G & T; consequently, under § 39-72-303(1), MCA (2003), Liberty, as G & T's insurer, is liable. Furthermore, Kratovil maintains that his motorcycle accident did not relieve Liberty of its obligation to pay his ODA benefits for his hand and wrist claims because that accident primarily injured his hip with only minor, temporary injury to his left hand. Lastly, Kratovil clarifies that he is not seeking payment of benefits related to injuries he suffered in his motorcycle accident or payment of total disability benefits since leaving

work in July 2004. He is simply seeking ODA benefits for claims arising out of his hand and wrist condition.

¶19　Section 39-72-102(1), MCA (2003), defined, in relevant part, "occupational disease" to mean "harm, damage, or death as set forth in 39-71-119(1) [MCA (2003)], arising out of or contracted in the course and scope of employment and caused by events occurring on more than a single day or work shift." For an employer to be liable for occupational disease benefits, the occupational disease must arise out of the claimant's employment. Section 39-72-408, MCA (2003), provided:

> (1) Occupational diseases are considered to arise out of the employment if:
>      (a) there is a direct causal connection between the conditions under which the work is performed and the occupational disease;
>      (b) the disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
>      (c) the disease can be fairly traced to the employment as the proximate cause;
>      (d) the disease comes from a hazard to which workers would not have been equally exposed outside of the employment.
>      (2) If the treating physician makes a positive determination pursuant to the factors provided in subsection (1), the treating physician shall also determine by percentage the amount of the occupational disease that was attributable to work rather than to activities or other conditions unrelated to the employment.

¶20　Additionally, because occupational disease frequently manifests over several years and possibly several employers, § 39-72-303, MCA (2003), stated, in relevant part:

> Which employer liable. (1) Where compensation is payable for an occupational disease, the only employer liable is the employer in whose employment the employee was last injuriously exposed to the hazard of the disease.
>      (2) When there is more than one insurer and only one employer at the time the employee was injuriously exposed to the hazard of the disease, the liability rests with the insurer providing coverage at the earlier of:

8

(a) the time the occupational disease was first diagnosed by a treating physician or medical panel; or

(b) the time the employee knew or should have known that the condition was the result of an occupational disease.

¶21 We first address whether the WCC applied the correct standard for determining proximate causation for compensability of an ODA claim—i.e., whether claimant's employment significantly aggravated or contributed to the occupational disease—as opposed to Liberty's contention that the claimant must establish that his work was responsible for at least 51% of his condition. We conclude that the WCC indeed did apply the correct standard, and reject Liberty's claim to the contrary.

¶22 Our decisions in *Polk v. Planet Ins. Co.*, 287 Mont. 79, 951 P.2d 1015 (1997) and *Montana State Fund v. Murray*, 2005 MT 97, ¶ 23, 326 Mont. 516, ¶ 23, 111 P.3d 210, ¶ 23, illustrate the fallacy of Liberty's argument that a claimant must prove that his or her work was 51% of the cause of his or her compensable condition. In *Polk*, this Court analyzed the interrelationship of two statutes—§§ 39-72-408 and -706, MCA. Section 39-72-706, MCA (1995), was an aggravation statute that allowed insurers to proportionately decrease occupational disease benefits if the disease was aggravated by a non-compensable disease or infirmity. In *Polk*, we explained that § 39-72-706, MCA, did not circumvent the proximate cause requirement in § 39-72-408, MCA, and the test for compensability is "whether occupational factors significantly aggravated a preexisting condition, not whether occupational factors played the major or most significant role in causing the claimant's resulting disease." *Polk*, 287 Mont. at 85, 951 P.2d at 1018. See also *Murray*, ¶ 23.

9

¶23 Subsequently, in *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 23, 315 Mont. 51, ¶ 23, 67 P.3d 290, ¶ 23, we held § 39-72-706, MCA, unconstitutional. Two years later, we decided *Murray* and, relying on *Polk*, affirmed the WCC's award of ODA benefits on the ground that Murray's work significantly contributed to his debilitating knee condition, despite the testimony of two physicians that Murray's work-related activities were less than 50% of the cause of his disabling condition.

¶24 Accordingly, we reject Liberty's argument that Kratovil must prove that his employment was 51% the cause of his occupational illness.

¶25 We next address whether Kratovil presented substantial credible evidence to support the WCC's finding that he had a compensable occupational disease requiring medical treatment of his hands and wrists. The WCC heard the testimony of both Kratovil and his former supervisor, Scott Branstetter, and found them to be credible witnesses. Both men testified that the work of a pipefitter/plumber was repetitive, labor intensive, and caused the hands of many people in this trade to "go" over time. Branstetter reported that Kratovil told him on numerous occasions about the pain and numbness in his hands and that these conditions had worsened through his years as a plumber/pipefitter.

¶26 Kratovil explained in a telephone interview in February 2005, in a deposition in May 2006, and at the hearing in June 2006, the history of his hand and wrist conditions, linking these conditions specifically to certain jobs, repetitive work tasks, and work-related accidents/incidents, the last of which occurred in June 2004 while working at G & T. He also described, in detail, his motorcycle accident, explaining that he did not

believe it caused significant injury to his hands or wrists because the gloves he was wearing during the accident bore little damage and he suffered no additional or protracted pain or discomfort in his hands or wrists after the accident.

¶27 Dr. Hansen's reports indicate that Kratovil's hands and wrist injuries were "clearly a pre existing condition" occurring before his motorcycle accident and that his hand numbness occurred gradually over time and had gotten worse. He also reported that Kratovil's wrist had experienced several job-related injuries and was subject to "a lot of repetitive overuse." Dr. Hansen recommended surgery on Kratovil's hands.

¶28 Based on this evidence, which is fully supported by the record, we conclude the WCC's factual findings pertaining to Kratovil's hand/wrist condition being an occupational disease that was not significantly affected by his motorcycle accident are supported by substantial credible evidence.

¶29 We next determine whether the court's legal conclusion that Kratovil's occupational disease is compensable by Liberty is correct. As noted above, the WCC interpreted § 39-72-408, MCA (2003), to require a showing that Kratovil's employment significantly aggravated or contributed to his occupational disease. Relevant case law, addressed above, supports the application of this standard. We further conclude that the evidence, as herein described, supports the WCC's conclusion that Kratovil's work as a plumber/pipefitter significantly aggravated or contributed to his hand and wrist conditions.

¶30 Applying § 39-72-303(1), MCA (2003), the WCC then concluded that G & T was the employer at the time Kratovil was last injuriously exposed to the hazard of the

11

disease. This conclusion is fully supported by the evidence and is a correct interpretation of the plain language of the statute. As insurer for G & T at the time Kratovil worked for G & T, Liberty is liable for benefits under the ODA to Kratovil.

¶31 Finally, as noted above and acknowledged by Liberty in its reply brief, it bears repeating that Kratovil is not seeking ODA benefits for injuries or lost wages associated with injuries sustained in his motorcycle accident; rather, he seeks ODA benefits solely for his work-related occupational disease.

## CONCLUSION

¶32 For the foregoing reasons, we affirm the WCC's Findings of Fact, Conclusions of Law and Judgment imposing liability for payment of occupational disease benefits to Kratovil on Liberty. The amount of such benefits have not yet been quantified. We therefore remand for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER